## MONFRINO v GUTELIUS et

Ohio Common Pleas, Trumbull Co

Decided Dec 31, 1938

Guarnieri & Secrest, Warren, for plaintiff.

George W. Buchwalter, Warren, for defendants.

## OPINION

By GRIFFITH, J.

This is a suit to restrain the defendants, the mayor, the director of safety, and the chief of police, of Warren, from stationing a police officer in the plaintiff's restaurant known as the "Steak House" on South Park Avenue.

The undisputed facts are that, prior to December 8, the defendants, in their official capacity, had stationed a uniformed police officer in the plaintiff's place of business from seven o'clock in the morning until one A. M., that being the closing time;

That the plaintiff had requested the defendants to withdraw the officer from his place of business, which was refused.

Plaintiff claims that this conduct, on the part of the defendants, has been the cause of embarrassment, and serious harm to his business.

The plaintiff, on May 24, 1938, had been arrested in this place of business, and plead guilty to the charge of interfering with an officer in the performance of his duty.

During the past eleven months, the following is a list of arrests made in this establishment, in each case of which a conviction was had in the Municipal Court of Warren, and fines imposed:

February 6—John Marino; exhibiting gambling paraphernalia, plead guilty, fined $100 and costs:

April 26—Romel Fortuna; possessing lottery slips, plead guilty, fined $25 and costs;

June 8—Anthony Milola; possessing and exhibiting gambling paraphernalia, plead guilty, fined $25 and costs;

June 9—Romeo Fortune; possessing gambling paraphernalia, plead guilty, fined $25 and costs;

June 15—Chestra Ventura; possessing and exhibiting gambling paraphernalia, plead guilty, fined $25 and costs;

July 7—Mike Savino; possessing and exhibiting gambling paraphernalia, plead guilty, fined $50 and costs;

July 15—Patsy Bassoni; possessing and exhibiting gambling paraphernalia, plead guilty, fined $50 and costs;

August 12—Joe Zambori; possessing and exhibiting gambling paraphernalia, plead guilty, fined $50 and costs;

September 9—Joe Zambori; possessing and exhibiting gambling paraphernalia, plead guilty, fined $50 and costs;

September 10—Joe Zambori; possessing and exhibiting gambling paraphernalia, plead guilty, fined $5 and costs.

The defendants'·justification for placing the officer in this establishment seems to be more in the nature of an action in rem; that is, they condemn the Steak House itself, rather than the plaintiff, and say that it is a gambling nest used to aid in violation of gambling laws; and their direct object apparently, is to reach and break it up.

Two questions present themselves to the court:

First, has the mayor, and his subordinate officers overstepped the powers vested in him;

And, second, if so, is this a case where the duty is cast upon a court of equity to interfere?

Courts, at all times, should be instruments to promote the public welfare, as well as private welfare.

Gambling is inimical to the best interest of society; and we have laws and ordinances prohibiting this insidious habit forming crime. The numbers racket, lottery slips, slot machines and the like, prey upon the unfortunate victims with as firm, and tenacious a grip as does dope upon addicts.

Courts of equity have no criminal jurisdiction; that is left exclusively to courts of law.

It is very likely that the plaintiff's business is being imperiled, and perhaps destroyed by the conduct of the defendants, in their efforts to enforce the criminal laws. Whether the defendants are less vigilant

·toward other establishments where gambling prevails, than as against this Steak House, is of no consequence to this court.

In a civilized community, such as this, the laws must be obeyed; and those who violate the laws must be punished; and it is for the executive officers to enforce the law vigorously, promptly and wholly impartially.

Upon this set of facts, may an order issue out of chancery restraining these defendants from interfering with the plaintiff in his ·business?

When the police are engaged in the enforcement of the criminal laws, that is one thing; when they go outside the law, and become themselves trespassers, and engage in illegal action, invading personal rights, as well as property rights, that is wholly another thing.

Official lawlessness is more reprehensible than personal lawlessness. Outrages perpetrated under the cloak of official badges are breeders of communism and anarchy. No good, only evil can possibly come from such conduct.

The only way to preserve law and order in the community, and administer the criminal is the way prescribed by law. The safety and the morals of the community require that all public officials should respect the law, and keep within the law.

A business man is entitled to protection of his legitimate business, from continued interference by police officers, when that interference is not well founded by the officers.

The plaintiff prays that the court restrain the defendants from stationing a police officer in his place of business by injunction.

It has been said by Mr. Justine Baldwin, in Bonaparte v Camden and Amboy Railroad Company, that:

⌐ "There is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or is more dangerous in a doubtful case, than the issuing of injunction. The right must be clear, the injury impending or threatened so as to be averted only by the protecting preventive process of injunction. * * * It will be refused till the courts are satisfied that the case before them is of a right about to be destroyed, irreparably injured, or great and lasting injury about to be done by an illegal act."

The facts in this case, undisputed, clearly show a long list of arrests and convictions of recent months in the Steak House, which the plaintiff owns and operated, each of which with only one exception is in connection with gambling.

The mayor is endeavoring to eradicate this vice outlawed by our criminal statutes. His efforts in this respect should be fostered and upheld by a steady confidence. He is not taking the law into his own hands, in an arbitrary or despotic manner. He is intelligently acting upon the unsavory record of this business establishment over the past year.

This court, sitting as a chancellor, must decline to grant the injunction prayed for;

To all of which exceptions are saved to the plaintiff.

The temporary restraining order is hereby dissolved and the case dismissed at the plaintiff's costs.